The PRESIDENT
delivered the opinion of the Court.
We will discharge the case from every thing connected with the division made under the order of Essex County Court. There was no suit commenced and the order was entirely ex parte.
It is the proper province of a court of equity to decree the specific execution of marriage articles, where the apparent intention of the parties will direct the decree without a strict scanning of the articles according to nice grammatical rules, or the technical meaning of the words.
It is objected, in the first place, that there are no parties to this statement. Mr. Roane and Mrs. Cook (the intended wife) are named as the contracting parties. All covenants refer to them, and the property spoken of refers to their property. — 2d, It is objected, that there is no consideration. It is plain, that the intended marriage, was the consideration ; and the motives expressed are, to make a provision for her, and to preserve peace in the family.
'The first clause, tho’ badly expressed, is easy to be understood : what were the respective marital rights of the parties is not contemplated, or defined; but whatever they were, the settlement was not to meddle with them, but was to commence on the dissolution of the marriage. No provision is made for the case of his surviving, but in the case of her outliving him, her provision is fixed, as to the three classes of his property.
The 2d clause relates to the land, and describes what part she shall hold in lieu of dower; about this there is no dispute : one thing however might be remarked, that as his lands, and not hers, were the subject of this clause, it induces an opinion, that his slaves, and not hers were also the subject of the 3d clause. It is contended, that under this clause, the wife’s slaves are to form a *381 part of the 20 which are to be allotted to her ; and that only so many of his are to be added, as will make up that number. This construction, it is said, is reasonable because the husband had but 40 slaves at the time of his death, and 20 would be half of that number, instead of a third, the proportion contemplated by the contract. But it is in proof that the estimate was made upon 70 slaves, of which he was possessed, at the time of the gifts of his sons.
*It is also argued, that Mr. Roane was possessed of his wife’s slaves at the time of his death, that they formed a part of the fund out of which the 20 were to be taken, and therefore that they should make a part of the number. The possession spoken of in this clause, means property, and not a mere holding. It means the same thing as is intended by the subsequent words, “of the slaves of the said William.” He had a right to hold her slaves during their joint lives, but the moment of his death put an end to his right. The contract operated upon, and gave them to another; and therefore they could not form any part of the stock out of which her dower was to be taken. Besides, the different. degree of interest, which she had in her own slaves, from that which she would have in dower slaves, seems conclusive, that they were not intended to be coupled together. But if in this clause the question be doubted, the next fully explains it.
Hitherto the parties appear to have contemplated the husband’s estate, and the wife's provision out of that. In the 4th clause, which in the settlement, is called the third, they take up the subject of the wife’s slaves, and speak of them very inaccurately. It appears as if they had formed an intention for providing for the issue of the marriage, but no such provision is made, except by implication, and as there was no issue, it is immaterial.
Nor is any provision made for the case of the husband’s surviving ; in which event he would therefore have been entitled to her slaves; but neither did that event happen.
The event provided for did take place. She survived, and had no child living at his death, when she was to be vested with the slaves which came by her, and their increase, in such absolute manner, .that she might dispose of them to whom she pleased, or they were to descend to her heirs. The child spoken of in this clause, means child of the marriage, since none other could be living at his death. Her death was probably mentioned in order to provide for the case of such a child living at his death, and dying before her.
Upon the whole of this point, the Court approve the decree, that the dower slaves shall be made up 20 in number out of Mr. Roane’s slaves, independent of hers. They also approve the decree as to the chariot horses.
Decree affirmed with costs.